UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DESTINI M.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO 1:21-cv-00679 (JGW)

---

APPEARANCES:

LAW OFFICES OF KENNETH HILLER, PLLC
  Counsel for Plaintiff
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

OF COUNSEL:

ANTHONY J. ROONEY, ESQ.
KENNETH R. HILLER, ESQ.
KELLY LAGA-SCIANDRA, ESQ.

VERNON NORWOOD, ESQ.

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is DENIED, the defendant's motion for judgment

1

on the administrative record is GRANTED, and the decision of the Commissioner is AFFIRMED.

I.    **RELEVANT BACKGROUND**

    A.    **Factual Background**

Plaintiff was born on May 9, 1986, and has less than a high school education. (Tr. 196, 210). Generally, plaintiff's alleged disability consists of interstitial cystitis, obesity, arthritis, fibromyalgia, and posttraumatic stress disorder (PTSD). (Tr. 209, 739). Her alleged disability onset date is January 16, 2013. (Tr. 196). Her date last insured was March 31, 2016. (*Id.*).

    B.    **Procedural History**

On June 9, 2014, plaintiff applied for a period of Disability Insurance Benefits (DIB) under Title II, and Supplemental Security Income (SSI) under Title XVI, of the Social Security Act. (Tr. 171-76, 184-87). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On March 2, 2017, plaintiff appeared before ALJ John Melanson. (Tr. 42-72). On June 1, 2017, ALJ Christine Cutter[1] issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 13-29). On July 2, 2018, the Appeals Council (AC) denied plaintiff's request for review. (Tr. 1-4). Thereafter, plaintiff timely sought judicial review in U.S. District Court for the Western District of New York on August 27, 2018. (Tr. 846-47). Parties agreed to a stipulated remand on August 30, 2019, and the AC remanded on April 30, 2020. (Tr. 838, 880-84). A new hearing was held telephonically before ALJ Stephan Bell on December 7, 2020. (Tr. 767-804). On February 8, 2021, ALJ Bell issued a second

---

[1] Per HALLEX 1-2-8-40(B) the case was reassigned to ALJ Cutter (Tr. 25).

unfavorable decision. (Tr. 733-66). Plaintiff then timely filed this civil action, seeking judicial review of the ALJ's decision.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since January 16, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity, rheumatological conditions variously diagnosed as rheumatoid arthritis, systemic lupus erythematosus, and fibromyalgia, mental impairments variously diagnosed as post-traumatic stress disorder (PTSD), alcohol dependence, and adjustment disorder, and interstitial cystitis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations: occasionally climb ramps, stairs, ladders, ropes, or scaffolds, occasionally balance, kneel, stoop, crouch, and crawl, occasionally work in vibration, limited to simple, routine, and repetitive tasks, limited to simple work-related decisions, occasionally interact with supervisors and co-workers, never interact with the public, and use a walker whenever standing or walking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 6, 1986 and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 733-63).

## II.     THE PARTIES' BRIEFINGS

### A.     Plaintiff's Arguments

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in his consideration of her subjective complaints. Second, plaintiff contends the ALJ did not properly consider her need to use the restroom. Lastly, plaintiff asserts the ALJ relied on stale opinion evidence. (Dkt. No. 11 at 2 [Pl.'s Mem. of Law].)

### B.     Defendant's Arguments

Defendant responded to each argument. Defendant argues the ALJ properly assessed plaintiff's subjective complaints, the plaintiff failed to show additional limitations due to urinary incontinence, and the ALJ properly evaluated the medical opinions of record.  (Dkt. No. 12 [Def.'s Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health*

*& Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Subjective Complaints

Plaintiff first argues the ALJ erred by not adopting all of her alleged limitations. (Dkt. No. 11 at 16). Indeed, plaintiff reported trouble standing, walking, sitting, kneeling, reaching, the need to lay down during the day, body-wide pain due to fibromyalgia, trouble climbing stairs, inability to walk without a cane or walker, and inability to lift anything heavier than her wallet. (Tr. 62-63, 773-74, 784, 786). The ALJ found that there was a lack

of objective evidence to support these claims of severity, but plaintiff asserts this was an error because fibromyalgia is a disease for which objective evidence is not usually present. (Dkt. No. 11 at 16). However, the ALJ considered plaintiff's allegations of disability pain from all her severe impairments, not just fibromyalgia, and properly determined that plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain were not entirely consistent with the evidence of record. (Tr. 746). *See* SSR 16-3p (ALJ must consider a claimant's symptoms and the extent to which such symptoms can be reasonably accepted as consistent with the evidence of record). Therefore, remand on this issue is not warranted.

Plaintiff concedes the ALJ's finding that fibromyalgia was a severe impairment, but he noted the record lacked evidence that other disorders were ruled out to make the diagnosis. (Dkt. No. 11 at 17, Tr. 740). To be sure, the MRIs, CT scans, and x-rays were generally unremarkable. (Tr. 406, 410, 462-64, 468, 482, 484-85, 504, 525, 550, 595, 1114, 1174, 1796, 2249, 2659). Similarly, the EMGs revealed merely mild right ulnar neuropathy and the ultrasound study was unremarkable. (Tr. 486-87, 732, 1268). Also, in March 2018, plaintiff was examined by orthopedic surgeon Dr. Rauh at Erie County Medical Center (ECMC) for bilateral knee pain but was pain-free throughout the exam. (Tr. 1174). Dr. Rauh even concluded that her pain complaints did not correlate with the MRI findings and other objective tests. (Tr. 1175). However, since the plaintiff's symptoms suggested a greater restriction than demonstrated by objective evidence, the ALJ appropriately considered other factors, such as activities of daily living, treatment other than medication, and other factors concerning her functional limitations due to pain. (Tr. 746). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Despite plaintiff's claims on her activities of daily living questionnaire that she could not cook, shop, nor walk for more than three steps at a time, she told consultative examiner Dr. Miller that she cooked and shopped and admitted to consultative examiner Dr. Ippolito that she cooked, helped with chores, attended appointments, and used public transportation. (Tr. 211, 214, 393, 396). Treatment records from ECMC reflect that plaintiff reported she shopped and was on her feet a lot, walked around briskly for several hours before she needed to rest, and walked her dogs several times per day. (Tr. 548, 1376, 1378). The same treating sources noted that while living with a friend, plaintiff parented her and her friend's children, cooked for everyone, and cleaned the apartment. (Tr. 1376). Plaintiff also told other treating sources that she went to the gym daily where she used a treadmill, attended Zumba classes, and walked. (Tr. 531, 2867). The ALJ properly considered these activities of daily living when evaluating the consistency of plaintiff's pain allegations with the evidence. (Tr. 746). *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

Contrary to plaintiff's argument, the ALJ appropriately considered that she had not generally received the type of medical treatment one would expect for a totally disabled individual with typically only conservative treatment for the alleged symptoms, she failed consistently to attend scheduled appointments, and she failed to continue treatment with specialized providers. (Tr. 748). *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p (ALJ should consider the effectiveness of the claimant's medication and treatment);

*see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's finding that Plaintiff's symptoms were not as severe as alleged). Indeed, her failure to pursue specialized treatment for allegedly disabling headaches, memory loss, neuropathy, and orthopedic impairments undermine her claims of total disability. *See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition").

The ALJ's consideration of plaintiff's drug-seeking behavior was also permissible when determining that her allegations were not entirely consistent with the evidence of record. (Tr. 748). *See Tomczak v. Comm'r of Soc. Sec.*, No. 18-CV-64-FPG, 2019 WL 2059679, at *1 (W.D.N.Y. May 9, 2019). On one occasion, plaintiff was escorted out of the hospital when she became irate and screamed after not getting pain medications but all physical examinations, blood work and laboratory data were unremarkable. (Tr. 1967-68). In sum, the ALJ's evaluation of plaintiff's subjective complaints is supported by both the law and the record.

### B. Bathroom Breaks

In a related argument, plaintiff next asserts that the ALJ failed to properly consider her need to use the restroom. (Dkt. No. 11 at 18). Plaintiff essentially argues that since cystitis was found to be a severe impairment there must be limitations in the RFC for restroom breaks. (*Id*. at 19). This argument is unavailing.

It is true that an ALJ is required to consider functional limitations associated with both severe and non-severe impairments in assessing a claimant's RFC and continuing through the sequential evaluation. *See Snedeker v. Colvin*, No. 3:13-CV-970 GLS/ESH,

2015 WL 1126598, at *7 (N.D.N.Y. Mar. 12, 2015) ("All impairments, i.e., both severe and non-severe, must be factored into a residual functional capacity determination that precedes sequential Step 4."). However not all non-severe or severe impairments cause functional limitations. *See Quimby v. Comm'r of Soc. Sec.*, No. CIV. A. 1:09-CV-20, 2010 WL 2425904, at *16 (D. Vt. Apr. 13, 2010) ("[T]he fact that an ALJ makes a 'severity' finding with respect to a particular impairment at step two does not necessarily mean that such impairment imposes functional limitations on the claimant which must be incorporated into the claimant's RFC."), adopted, 2010 WL 2425903 (D. Vt. June 8, 2010).

As noted previously, it is the ALJ who must evaluate the intensity and persistence of any symptoms reported by the plaintiff. *See* SSR 16-3p. In that role, the ALJ must compare a plaintiff's reports to the objective medical evidence and the other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)-(3); SSR 16-3p. Here, the ALJ did just that, and discounted plaintiff's testimony about bathroom use because it was not supported by medical findings, treatment history, and daily activities. *Bowen v. Comm'r of Soc. Sec.*, No. 1:19-CV-00420 EAW, 2020 WL 2839318 (W.D.N.Y. June 1, 2020).

At the first hearing, in March 2017, plaintiff testified she may need to use the restroom over ten times a day (Tr. 739) and at the most recent hearing she testified to using the bathroom 14 to 16 times a day (Tr. 789). However, ALJ Bell appropriately concluded that plaintiff's urinary incontinence reports were inconsistent. (Tr 747). For example, in November 2015 plaintiff denied bladder incontinence to Dr. Bansal. (Tr. 459). Plaintiff's activities of daily living also contradicted her allegations of urinary frequency. As discussed above, plaintiff's treating sources reported she shopped and was on her

feet a lot, walked around briskly for several hours before she needed to rest, walked her dogs several times a day, went to the gym daily, cooked and cleaned for her friend and children, and even took Zumba classes. (Tr. 211, 214, 396, 531, 548, 1376, 1378, 2867).

As the Second Circuit has held, "the [Commissioner] is entitled to rely not only on what the record says but also on what it does not say." *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995)(*citing Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Significantly, none of her treating sources assessed limitations due to urinary frequency or incontinence. Treatment provider Dr. Molloy noted that plaintiff had no genitourinary complaints, and she was negative for urinary frequency. (Tr. 2702). Similarly, plaintiff told Physician Assistant Fisher that she had no bladder dysfunction. (Tr. 2858). Plaintiff has not satisfied her burden to show she was more limited than assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore v. Astrue,* 566 F.3d 306 (2d Cir. 2009) (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While plaintiff may disagree with the ALJ's conclusion, plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

### C. Stale Opinion Evidence

Lastly, plaintiff argues the RFC is not supported by substantial evidence because the ALJ relied on stale opinion evidence from consultative examiner Dr. Miller. (Dkt. No. 11 at 22). This argument does not warrant remand.

In connection with her benefits application, plaintiff attended a consultative examination with Dr. Miller in August 2014. Upon physical examination, Dr. Miller

observed that plaintiff's gait and stance were normal and her squat was full. (Tr. 396). Plaintiff exhibited no difficulty changing for the examination, getting on and off the examination table, nor rising from a seated position. Plaintiff's cervical spine and lumbar spine each exhibited full ranges of motion. (R. 397). Plaintiff demonstrated full muscle strength and full ranges of motion as well as normal reflexes and sensations throughout her arms and legs, but for limited ranges of motion in her hips and knees. (R. 396-98). Dr. Miller assessed that plaintiff had mild limitations in heavy lifting, bending, and carrying and should should avoid dust, pulmonary irritants, and tobacco exposure due to her asthma. (Tr. 398). ALJ Bell accorded great weight to Dr. Miller's opinion. (Tr. 749-50).

While it is true that "[a] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition," *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017), "a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). In fact, a dated opinion "may constitute substantial evidence if it is consistent with the record as a whole." *Id.; see also Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (no error where an ALJ relied on dated opinions because there was no indication in plaintiff's records that his condition had significantly deteriorated).

Plaintiff has failed to cite to any medical opinion evidence that demonstrates her condition experienced any meaningful deterioration after Dr. Miller's assessment. *See Jimmerson v. Berryhill*, No. 16-CV-442-FPG, 2017 WL 3149370, at *5 (W.D.N.Y. July 25, 2017) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (medical source opinion was not stale where plaintiff failed to show a

deterioration in her condition after the report). Plaintiff relies on the fact that the opinion was six years old at the time of the second hearing and that it did not account for diagnostic imaging in the intervening time. (Dkt. No. 11 at 22). The plaintiff identifies subsequent imaging that was all either unremarkable or with mild findings. (Dkt. No. 11 at 25). She again does not satisfy her burden of proving that her RFC is more restrictive than that found by the ALJ. *Poupore v. Astrue*, 566 F.3d at 306. The substantial evidence standard is a very deferential standard of review and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

**ACCORDINGLY,** it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

        **DENIED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

        **GRANTED**.

Dated: May 9, 2024  
Rochester, New York

J. Gregory Wehrman  
HON. J. Gregory Wehrman  
United States Magistrate Judge